LEWIS C. POTTER

*v.*

SPA SPRING BRICK COMPANY.

NIELS SMITH

*v.*

PERTH AMBOY BRICK COMPANY.

This court having appointed a receiver of an insolvent corporation, and a person not a party to the suit under which he was appointed having presented a petition to the court setting up a right to the possession of certain land in the possession of the receiver, as such, praying this court to adjudicate upon his rights, and to direct the receiver to deliver possession to him—*Held*, in the absence of any appearance of a ground of claim of right of possession on the part of any other party not before the court, that this court will hear and determine the petitioner's claim, although it was one within the jurisdiction of a court of law.

On bill for receiver. On petition of the executors of James Jameson.

*Mr. John S. Voorhees*, for the petitioners.

*Mr. Warren Dixon*, for himself.

PITNEY, V. C.

These bills were filed by creditors of the several corporations defendant under the seventieth section of the "Act concerning corporations," alleging insolvency and praying the appointment of a receiver.

Mr. Dixon was duly appointed such receiver for each corporation, and each was duly decreed to be insolvent. It clearly appears that each corporation is hopelessly insolvent and will undoubtedly be dissolved.

The Spa Spring Brick Company was lessee of a brick-yard and plant at Spa Springs, near Perth Amboy, by virtue of a lease thereof from the petitioners' testator, dated October 2d, 1889, for ten years, at a rent payable quarterly. This lease contains a covenant on the part of the lessee, that it will not, during the term, assign the leased premises to any person; and also a provision that if any of the rent shall be due and in arrear, or if any default shall be made in any of the covenants, the lease shall cease and become-void, and it shall be lawful for the lessor to re-enter &c.

The rent was paid to April 1st, 1890.

In May, 1890, one Schilling, who owned or controlled nearly or quite all of the stock of the Spa Spring company, organized the Perth Amboy company, and transferred to it all the assets of the Spa Spring company, without providing for its creditors. This provoked the first bill.

The receiver was appointed June 14th, 1890, and about the 27th of June a building on the premises, necessary for their advantageous use in brickmaking, was destroyed by fire. It has not been rebuilt. The receiver is in possession, and the only use of the premises which he makes, or desires to make, is to store certain bricks thereon until he can find a market for them. He is not making any bricks, and does not propose to make any. Nor does he propose to pay the whole or any part of the rent which

has accrued since April 1st, or will accrue, except, of course, such dividend as the executors of the lessor may receive as general creditors of the defendant corporation.

In this posture of affairs the executors of the lessor petition this court to direct the receiver to deliver them the possession of the premises, and at the hearing they offered to submit to such equitable terms as the court might impose, and expressly offered to permit the receiver to use so much of the premises as he might need for storing brick and other necessary purposes in winding up the affairs of the company, free of rent.

There is no suggestion, or reason to suspect, that any third party is entitled to the possession as against the petitioners; and therefore the considerations that influenced the court in the case of the *Long Branch and Seashore R. R. Co., 9 C. E. Gr. 402; S. C., 11 C. E. Gr. 539,* do not apply.

. The receiver's defence is, that one of the buildings having been destroyed by fire, at a time when no rent was actually due by the terms of the lease, the petitioners are not in a position to demand any rent or to say that there is any rent in arrear until they shall have rebuilt (*Rev. p. 576*), which they do not propose to do. And he says that although he cannot sell or assign the lease, still it is an asset in his hands, out of which it is his duty, if practicable, to realize something for the creditors, even though it be by compelling the petitioners to pay him for the surrender.

. He further insists, that the petitioners have no standing in this court, either by petition or bill, but must resort to their action at law to recover possession.

He refers, in support of this last point, to the cases of *Receiver of State Bank* v. *First National Bank of .Plainfield, 7 Stew. Eq. 450,* and *Palys* v. *Jewett, 5 Stew. Eq. 302.*

Both cases are clearly distinguishable from the present. In the first the receiver was the petitioner, and the question was, whether he had any equitable cause of action against the defendant, who was not a party to the suit, and, if so, whether he could prosecute it by a petition or must resort to a bill. The case is widely different from the present, where the outside party voluntarily waives whatever right he may have to proceed at law and

comes to the court and asks it to do him simple justice according to its own notion of what is just.

*Palys* v. *Jewett* was a proceeding by a person who had been injured by a railway train, run by a receiver of the court, for redress in damages for such injury. And the opinion of the learned chief-justice in the court of errors and appeals, was based on the supposed fact (*5 Stew. Eq.* at *pp. 318, 319*) that the petitioner had asked this court for leave to proceed at law, or at least for a trial by jury, and had been refused, and so was forced against his will to submit his case in all its parts to the determination of this court. In this I have reason to believe he was mistaken. The opinion was aimed, in the first place, against the competency of this court, under any circumstances, to ascertain what are called unliquidated damages; and, in the second place, against the right of the court to refuse a party, who has a cause of action at law against its receiver, permission, if he asks it, to proceed in a court of law to enforce it.

Speaking of the familiar practice which requires such party to apply to this court for leave to sue its receiver and the necessity in such case to show a *prima facie* case, he says (at *p. 316*) : " The limits of the practical rule are here very plainly settled. It establishes that permission to sue must be asked, and that the court will look into the title, and if the claim be obviously frivolous, permission to sue will be denied. *So, if the title were incontestably clear against the receiver, the court certainly would have the power to relinquish the property to the claimant.* And this is the entire control that Lord Eldon claimed, for, so far was he from asserting any right to try the case as against the plaintiff, that he expressly declares ' the court would not require a man to disclose all his evidence in the master's office. That would be a very oppressive mode.' "

And (at *p. 317*) he says : " In this class of cases the chancellor will not undertake to decide a purely legal question against the person who demands from him a trial at law." And other expressions to the same effect are found in other parts of the opinion, showing that the learned chief-justice had in mind cases where a party was drawn against his will to litigate in this court.

And it is to be remarked of this case that, notwithstanding the decided expressions of opinion against the action of the court below, the court of review proceeded to hear the cause on its merits, stating, as a reason, that no appeal had been taken from the order refusing a trial by jury.

These cases do not apply to a case where a party who has a cause of action against a receiver of this court comes voluntarily into the court and by his petition asks the court not to permit him to sue at law but to do him justice according to its own notion of what is just, submitting himself to the jurisdiction of the court, and offering to do what the court deems equitable. And I am of opinion that in such a case it is competent for this court to hear and deal with his complaint, and that it does not lie in the mouth of its receiver to object to such assumption of jurisdiction.

It is proper, however, in order to avoid misunderstanding, to say that there may be considerations arising out of the character of the demand which may constrain the court to decline the jurisdiction and leave the party to his legal remedy.

In the case in hand I find no difficulty. I cannot accede to petitioners' claim that the lease was forfeited by the nominal transfer of the possession of the premises by the Spa Spring Brick Company to the Perth Amboy company. To do so would be to enforce an unmeritorious forfeiture. On the other hand, I cannot accede to the receiver's position as to the effect of the destruction by fire of a portion of the premises, and the failure to rebuild. I think he is not in a position to invoke the aid of the statute on that subject; nor do I see how the receiver can have any standing in this court to keep the lease in force as a valuable asset, unless he pays the rent.

I am, therefore, of the opinion that the petitioners are entitled to the possession of the premises upon the terms proposed—of permitting the receiver to make such use of them as is necessary in order to enable him to dispose of the assets stored thereon.